IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CAROL L. MOON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:03-CV-0203 |
| | § | |
| JO ANNE BARNHART, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**TO AFFIRM DECISION OF COMMISSIONER**

Plaintiff CAROL L. MOON brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant JO ANNE BARNHART, Commissioner of Social Security (Commissioner), denying plaintiff's application for a term of disability and disability benefits. Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
THE RECORD

On July 17, 2001, plaintiff protectively filed an application for supplemental security income (SSI) benefits under Title XVI of the Social Security Act alleging an onset date of November 26, 1975. (Transcript [hereinafter Tr.] 14, 19, 208-209). On August 2, 2001, plaintiff filed an application for widow's insurance benefits under Title II of the Social Security Act. (Tr.

66-67). The Social Security Administration denied benefits initially and upon reconsideration and plaintiff timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). An administrative hearing was held January 13, 2003 before ALJ Gary Vanderhoof. (Tr. 25-45). On March 25, 2003, the ALJ rendered an unfavorable decision, finding plaintiff not disabled and not entitled to benefits at any time relevant to the decision. (Tr. 14-19). The ALJ determined plaintiff did not have any significant past work experience, (Tr. 18, Finding #6)[1], but further determined plaintiff retained the ability to perform either light or medium work. (Tr. 18, Finding #5). The ALJ determined plaintiff could perform a significant number of jobs which exist in the economy and was not disabled pursuant to the medical-vocational guidelines. (Tr. 18, Finding #6).

Upon the Appeals Council's denial of plaintiff's request for review on May 16, 2003, ALJ Vanderhoof's determination became the final decision of the Commissioner. Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.
## ISSUES

As set forth by the plaintiff, the sole issue before the Court is whether or not the decision of the Administrative Law Judge is supported by substantial evidence. Plaintiff's Brief at 1.

## III.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this court's role is limited to

---

[1] There was testimony that plaintiff had worked for two weeks as a dish washer in 1995 and part-time for a friend as a clerk in a second hand store for a couple of years. (Tr. 31-33, 97).

determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94(5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d at 164. Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

IV.
PLAINTIFF'S IMPAIRMENTS

Plaintiff Moon was born July 14, 1951, (Tr. 29, 66, 208) and has her GED. (Tr. 30, 94). In her brief plaintiff states her impairments include spinal conditions of increased lordotic curve,

T-12 compression, and degenerative spondylitis at L1 and L2, as well as damage to her inner ear causing dizziness and repeated falls. (Plaintiff's Brief at 2-3).[2] The ALJ determined plaintiff suffered from the medically determinable impairments of degenerative disc disease of the spine and obesity. (Tr. 15). While the ALJ determined the impairments are "severe" within the meaning of the Social Security Regulations, he did not find plaintiff's impairments to be so severe as to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (*Id*.). The ALJ found plaintiff's allegation that she was unable to work because of her functional limitations to be inconsistent with the objective medical records. (*Id*.) The ALJ found plaintiff retained the RFC for either light or medium work. (Tr. 18). The ALJ noted plaintiff was 50 years old at the time she filed her applications for benefits. (*Id*.) The ALJ further described plaintiff as an individual approaching advanced age under the regulations, that she had a GED, but that she had no significant past work experience. (*Id*.)

The ALJ cited Tables No. 2 and No. 3 of the Medical-Vocational Guidelines of Appendix 2 of Subpart P of the Regulations for the proposition that such rules coincided with plaintiff's vocational profile. The ALJ then found that plaintiff, based upon an ability to perform substantially all of the requirements of light and medium work, and considering plaintiff's age, education, and work experience, was not disabled stating, "Based upon her capability to perform work that exists in the economy in accord with these rules [Rules 202.13 and 203.21], I find that the claimant is not disabled at any time through the date of this decision." (*Id.*). Plaintiff argues the ALJ's decision was not supported by substantial evidence.

---

[2] Lordotic curve refers to, "the anterior concavity in the curvature of the lumbar and cervical spine as viewed from the side." *See* Dorland's Illustrated Medical Dictionary (29th ed. 2000). Spondylosis is defined as, "a general term for degenerative changes due to osteoarthritis." (*Id.*).

V.
MERITS

The ALJ made the determination that plaintiff is not disabled at Step Five of the five-step sequential analysis by using the Medical Vocational guidelines.  Therefore, this Court is limited to reviewing whether there was substantial evidence in the record as a whole supporting the Step 5 finding, and whether the proper legal standards were applied in reaching that decision.

Plaintiff has not presented a point of error challenging the ALJ's use of the Grid nor does she challenge the ALJ's finding at Step 3.  In her point of error, plaintiff contends the ALJ discounted her complaints of pain, supporting his position by referring to "negative physical examinations," and stating a "tedious litany of irrelevancies."  (Plaintiff's Brief at 4).

In reaching his decision, the ALJ stated,

> There are few medical records relating to the period prior to the claimant filing her applications for benefits.  X-rays of her lumbar spine and knees in December 1994 showed no abnormalities.  X-rays of the cervical spine at that time were within normal limits except for some narrowing of the disc space and hypertrophic spurs at the T11-12 and T-12-L1 levels and a severe wedge deforming of T-12 secondary to previous fracture.[3]  There is then no evidence of medical complaint or treatment until May 1997 when the claimant visited the emergency department of Golden Plains Community Hospital for evaluation of cough and congestion that were attributed to acute bronchitis.  She was given medication and released.  She visited the same facility in January 1998 with a complaint of right hip pain, secondary to a trip and fall.  An X-ray of the right hip showed no evidence of fracture or other abnormality.  The treating physician diagnosed a hip strain and contusion, administered some medication, which quickly reduced the claimant's pain, and discharged her in stable condition. (Exhibits 1F [Tr. 130-131]; 7F:40-49 [Tr. 194-203])(Tr. 15-16).
>
> There is again no record of further medical care for over two years.  On April 2, 2000 Ms. Moon came to the emergency department of Golden Plains Community Hospital for treatment of mouth pain and toothache.  She was noted to have sinus

---

[3] Plaintiff testified she was involved in two motor vehicle accidents, the first in 1975 and the second in 1994, at least one of which resulted in broken vertebrae.  (Tr. 37-39).

> drainage and a sore throat, but the remainder of her physical examination was normal. She moved all her extremities well and registered no complaints of musculoskeletal or back pain. The examining physician diagnosed sinusitis and toothache, prescribed medication, advised the claimant to see a dentist as soon as possible, and discharged her in improved condition. A year and a half later, on September 18, 2001, the claimant returned to the hospital emergency department and said she felt dizzy and lightheaded. She walked with an unsteady gait but said she was in no pain. EKG examination, a chest X-ray, and laboratory tests were all normal, as was the rest of her physical examination. She again made no mention of musculoskeletal pain or dysfunction. The treating physician gave her medication for dizziness and her symptoms resolved. She was advised to follow-up with her primary care provider, but she stated that she had not been seeing any regular physician at that time. (Exhibit 7F:21-39 [Tr. 175-193])(Tr. 16).
>
> ....
>
> Finally, the record includes reports of two more visits to the emergency department of Golden Plains Community Hospital. On December 11, 2001 Ms. Moon complained of back pain secondary to a fall out of bed several days earlier. X-rays of the chest and ribs showed no fractures or other acute abnormalities other than an old vertebral compression fracture at the L-1 level, an anomaly which had been present on previous X-rays in 1997. On examination the claimant said she had mild pain in the low back, but she registered no other complaints and exhibited no other abnormal findings. The examining physician diagnosed a contusion to the back and right thigh, prescribed medication, and discharged the claimant in good condition. On March 18, 2002, she tripped and fell while visiting in the hospital's OB department. She complained of pain in her low back and right hip. The treating physician diagnosed a ligament sprain in the low back, administered pain medication, and discharged the claimant with instructions to rest her back for the next week. She then returned to the OB department to continue her visit. (Exhibit 7F: 2-20 [Tr.156-174]) (Tr. 17).

Although plaintiff takes issue with the ALJ's discussion of some of plaintiff's treatment, including her toothache and a negative chest X-ray, (Plaintiff's Brief at 4-5), the ALJ's review of all of this medical evidence and his comments on that evidence are relevant because the ALJ's credibility determination rests in part upon the absence of any complaints of disabling pain by plaintiff to her medical providers. For example, plaintiff visited the emergency room for other non-serious ailments, but at no time complained about pain related to musculoskeletal

impairments. The ALJ stated,

> The claimant's treatment regimen has been minimal. She visited a hospital emergency department in May of 1997 for treatment of acute bronchitis, in January 1998 for right hip pain, in April 2000 for mouth pain and toothache, and in September 2001 for symptoms of dizziness. On each occasion her physical examinations showed no significant abnormalities and she responded quickly to routine medications (Exhibit 7F: 21-39 [Tr. 175-193])....The claimant visited a hospital emergency department two more times, in December 2001 and March 2002, for complaints of back pain secondary to a fall. Radiographic and physical examinations showed no need for any aggressive treatments, and the claimant was discharged with pain medications. (Exhibit 7F: 2-20 [Tr. 156-174]) (Tr. 17).

It is well settled that the determination whether pain is disabling falls, in the first instance, within the discretion of the ALJ whose decision is entitled to considerable deference. *Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988). In this case, the ALJ determined plaintiff's subjective complaints of disabling pain were not entirely credible. In reaching his decision, the ALJ considered the claimant's lack of complaints and treatment and her activities of daily living as represented in an Activity of Daily Living (ADL) scale that she was independent in cooking, housekeeping, traveling, and medication management. (Tr. 17; 133). Although plaintiff testified at the hearing she was not independent in some of these activities (Tr. 35-36), such evidence is to be weighed by the ALJ. The ALJ also found plaintiff's complaints of pain not credible because the medical evidence did not support the *severity* of the pain plaintiff claimed. In this case the ALJ was within his statutory authority to make a determination of plaintiff's credibility and to determine if her complaints of pain were supported by the record. The ALJ determined plaintiff was not entirely credible and cited the reasons for such determination as discussed *supra*. The ALJ further supported his final opinion with specific references to the medical records finding a lack of evidence to support plaintiff's complaints of pain. The ALJ did what he was statutorily

entitled to do, and plaintiff has not demonstrated error.

In addition to the credibility question, the plaintiff was sent to Dr. Bruce Harrow for a consultive medical exam in December of 2001. (Tr. 136-142). Dr. Harrow found,

> Ms. Moon can sit, stand, move about, lift, carry, handle objects, hear, and speak. Her gait was normal without a cane although she uses a Supercane when walking. I found no abnormalities with a radicular distribution. Spine motions were normal except for decreased lumbar extension. She demonstrated the abilities to untie/retie her shoes, unbutton/button her shirt, and to retrieve a pencil from the floor. Her functional disabilities are consistent with obesity and deconditioning.

(Tr. 190). These findings by Dr. Harrow support the ALJ's determination that plaintiff's pain was not so severe as to be disabling or limiting to the degree it precluded light or medium work. Further, a residual functional capacity (RFC) assessment was completed December 19, 2001 by DDS physician Grethe E. Wik, D.O. (Tr. 147-154). In the assessment the doctor determined plaintiff could occasionally lift and/or carry 50 pounds, could frequently lift and/or carry 25 pounds, could stand and/or walk (with normal breaks) for about 6 hours in an 8-hour workday, and could sit (with normal breaks) for about 6 hours in an 8-hour workday. (Tr. 148). It was also determined that plaintiff had unlimited ability to push and/or pull and that she could occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 148-149). Plaintiff was found to be limited in her ability to climb in that she could never climb ladders, ropes or scaffolds, but she could climb ramps and stairs. (Tr. 149). Plaintiff was found to have no manipulative, visual, communicative, or environmental limitations. (Tr. 150-151). Nothing in the medical records contradicts the assessment of Dr. Harrow nor the RFC determination by Dr. Wik and the ALJ was entitled to rely on the examination and report by Dr. Harrow and the RFC by Dr. Wik, which provide substantial evidence to support his (the ALJ's) determination that plaintiff retained the residual function capacity to perform substantially all of the requirements of light

and/or medium work. In her brief, the only medical records plaintiff cites for the proposition she is clearly disabled are contained in the transcript at pages 137 and 141. Page 137 is a recitation of what plaintiff told the doctor *i.e.* it notes plaintiff's subjective complaints. Page 141 notes no neurologic impairments and reflects plaintiff's functional limitations to include a fair tandem gait, and a poor ability to squat and hop. Page 141 also cites to a diagnostic x-ray study from November 29, 2001 showing increased lordotic curve, old T-12 compression and wedging, and degenerative spondylitis of L1 and L2. That study, however, was before both Dr. Harrow and Dr. Wik when they rendered their opinions. Neither of these doctors considered that record (Tr. 141) to preclude the diagnosis or RFC they gave. These medical records contradict plaintiff's position that she clearly suffers from a disability precluding her from working.

There was insufficient medical evidence of a disabling back impairment and a consultative examination was ordered. The results of the consultative exam support the ALJ RFC determination and are contrary to plaintiff's claims of disabling pain.

## VI.
## SUMMARY

In this case, the issue is not whether plaintiff has a condition capable of causing pain, the issue is whether the pain plaintiff experiences is completely disabling, and if not completely disabling, then to what degree, if any, such pain limits plaintiff's RFC.

Had the ALJ found plaintiff's testimony at the administrative hearing and her complaints of disabling pain credible, rather than not credible, then it would certainly seem plaintiff would not be capable of performing light and/or medium work and would have been found disabled. In

essence, the argument plaintiff appears to make is that the ALJ should have found her subjective complaints credible. Adopting such argument, however, would require this Court to substitute its judgment for the ALJ's judgment on the issue of credibility. Under the law governing Social Security appeals, this Court is not permitted to do so.

There is no dispute of any substance that the medical evidence in this case is scant. What little medical evidence there is does not support plaintiff's claims of disabling pain. The ALJ's determination that plaintiff was not seen medically for complaints of disabling back pain is supported by the records which reflect the lack of complaints. Dr. Harrow's examination of plaintiff further supports the ALJ's determination that plaintiff's pain was not disabling or restrictive to the degree plaintiff testified. To the extent there may be some explanation as to why plaintiff did not seek medical treatment for her complaints of disabling pain, or to the extent there may be some explanation regarding Dr. Harrow's examination, such explanations would merely create a conflict in the evidence for the ALJ to resolve. This Court is not permitted to make a *de novo* determination whether plaintiff is truly disabled or not disabled. This Court may only determine if there is sufficient evidence in the record to support the defendant's finding of not disabled and whether such evidence meets the substantial evidence standard. In this case there is. For all of the reasons cited above, the ALJ's determination of not disabled is not reversible.

## VII.
## RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the

defendant Commissioner be AFFIRMED.

## VIII.
## INSTRUCTIONS FOR SERVICE

The District Clerk is directed to send a copy of this Report and Recommendation to plaintiff's attorney of record by certified mail, return receipt requested, and to the Assistant United States Attorney by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 9th day of June 2006.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the file mark on the first page of this recommendation. Service is complete upon mailing, Fed. R. Civ. P. 5(b), and the parties are allowed a 3-day service by mail extension, Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed**. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).